UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                    :

ROCKY ASPEN MANAGEMENT 204 LLC,

                                    :

              Plaintiff,                  MEMORANDUM OPINION

                                    :

              -against-                16 Civ. 4270 (VM) (GWG)

                                    :

HANFORD HOLDINGS LLC,

                                    :

              Defendant.

                                    :
-------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       This litigation concerns a dispute between several entities and individuals that arose following a failed investment in a restaurant, including a loan made by defendant Hanford Holdings LLC ("Hanford"). Before the Court is a discovery dispute between Hanford and a number of parties — Rocky Aspen Management 204 LLC, Watershed Ventures LLC, Jeffrey Citron, Stephen Goglia, and Mark Hamwi (collectively, "Watershed") — some of whom are alleged to have had responsibility for repaying the loan. The Court issued an oral decision resolving the discovery dispute at a conference held on August 13, 2019. The Court now issues this written decision to memorialize its ruling on one aspect of the dispute.

       One of the discovery disputes was whether Hanford was entitled to obtain communications about settlement and the ultimate settlement agreement that emerged from a prior litigation involving Watershed Ventures LLC, Citron, and David Burke, the chef who was to be involved in the restaurant. The settlement agreement was a private agreement between the parties and included a confidentiality provision. The settlement agreement was never made part of a court order and the settlement discussions between the parties were not governed by any court order.

In its submission arguing that the materials related to settlement should be shielded from disclosure, Watershed argued that the heightened three-part test articulated in In re Teligent, Inc., 640 F.3d 53 (2d Cir. 2011), should apply to this Court's resolution of the dispute. Letter from Eric C. Weissman, filed July 26, 2019 (Docket # 125) ("Watershed Letter"), at 2. In that case, certain parties had engaged in a mediation that was governed by a court-ordered protective order that limited the parties' ability to disclose the discussions. In re Teligent, Inc., 640 F.3d at 56. The court noted that "[c]onfidentiality is an important feature of the mediation and other alternative dispute resolution processes" and that "[p]romising participants confidentiality in these proceedings promotes the free flow of information that may result in the settlement of a dispute." Id. at 57 (citation and internal quotation marks omitted). The court then articulated the heightened standard that governed the discovery of the settlement discussions, holding that "[a] party seeking disclosure of confidential mediation communications must demonstrate (1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality." Id. at 58 (citations omitted).

The question raised before the Court is whether that standard applies to settlement discussions among private parties that are not governed by a court order, and whether it applies to a settlement agreement that was never ordered by a court but that contains a confidentiality provision.

Watershed pointed to the case of Dandong v. Pinnacle Performance Ltd., 2012 WL 4793870 (S.D.N.Y. Oct. 9, 2012), in support of its argument that the In re Teligent test applies to this dispute, arguing that Hanford's need for the settlement materials is not "special or compelling" under In re Teligent. Watershed Letter at 2. Dandong involved a mediation that

2

was conducted privately and without court intervention.  See 2012 WL 4793870, at *1, *4.

Dandong held that the In re Teligent standard applied to the dispute, reasoning that the "Second

Circuit's policy basis for the [three-part heightened] test applies with as much force to private

mediations as it does to court-sponsored mediations."  Id. at *4.  Dandong noted that In re

Teligent "used sources that referred to both public and private mediation," "cited at least two

cases that were about private mediations," and "relied on the Uniform Mediation Act, which

applies to private mediation."  Dandong, 2012 WL 4793870, at *4 (citations omitted).

We have carefully considered Dandong and conclude, however, that it was wrongly

decided insofar as it ruled that In re Teligent applied to a private mediation not subject to any

court order.[1]  First, there is a significant difference between parties who proceed under a court

order of confidentiality and parties who engage in private discussions or who insert a

confidentiality provision into a settlement agreement.  In re Teligent specifically adverted to the

fact that there had been a "promis[e]" made by a court to participants in the settlement process to

keep matters confidential.  640 F.3d at 57.  In re Teligent's rationale thus rested on the notion

that the court had an obligation to honor to some degree its promise of confidentiality.  Second,

the mere fact that In re Teligent "used sources that referred to both public and private

mediation," "cited at least two cases that were about private mediations," and "relied on the

Uniform Mediation Act, which applies to private mediation," Dandong, 2012 WL 4793870, at

*4 (citations omitted), is of no significance.  In fact, none of the cases In re Teligent cited

involving private mediation applied a heightened standard to discovery.  And while the sources

mentioned by Dandong were used by In re Teligent to explain the importance of confidentiality

---

[1]  The Dandong case decided objections to an oral ruling by this Court that also assumed
the In re Teligent standard applied.  For the reasons stated herein, this Court now believes that
the In re Teligent standard did not in fact apply.

in the mediation process, In re Teligent made no effort to equate court-supervised mediation with private mediation for purposes of applying its heightened test. Third, In re Teligent did not involve a private mediation and thus any rule it announced as to such a mediation would be dictum.

Finally, in a slew of cases — many of which were decided before Dandong — courts have recognized that the "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure is the proper test to govern discovery disputes involving the disclosure of settlement discussions and settlement agreements where there was no promise of confidentiality by a court. See, e.g., Kent v. The N.Y. State Pub. Emps. Fed'n, AFL-CIO, 2019 WL 457544, at *6-7 (N.D.N.Y. Feb. 5, 2019) (ordering disclosure of settlement agreement under "good cause" standard but making it subject to confidentiality order); King Cty., Wash. v. IKB Deutsche Industriebank AG, 2012 WL 3553775, at *1 (S.D.N.Y. Aug. 17, 2012) (employing "good cause" standard for discovery under Rule 26 and noting that the majority of courts in the Second Circuit "hold that the required showing of relevance is no higher for settlements than it is for the discovery of other kinds of information") (citation omitted); Small v. Nobel Biocare USA, LLC, 808 F. Supp. 2d 584, 587 (S.D.N.Y. 2011) ("Though district courts in this Circuit have in the past disagreed as to whether discovery of settlement agreements requires a heightened showing of relevance, the majority view is now that no such heightened showing is required."); Gen. Elec. Co. v. DR Sys., Inc., 2007 WL 1791677, at *1 (E.D.N.Y. June 20, 2007) ("the most recent view [is] that Rule 26's relevancy standard applies to the disclosure of settlement documents"); Conopco, Inc. v. Wein, 2007 WL 1040676, at *2-6 (S.D.N.Y. Apr. 4, 2007) (employing good cause analysis in deciding motion to quash subpoena directed at third party seeking to obtain information relating to prior settlement agreement); In re Initial Pub. Offering Securities Litig.,

2004 WL 60290, at *4 (S.D.N.Y. Jan. 12, 2004) (no heightened showing required to obtain

disclosure of pre-settlement discussions) (citing cases).  Related case law has made clear that

confidentiality provisions inserted by parties into private settlement agreements do not immunize

those agreements from discovery.  See, e.g., Conopco, Inc., 2007 WL 1040676, at *5 (citing

cases); Burda Media, Inc. v. Blumenberg, 1999 WL 413469, at *3 (S.D.N.Y. June 21, 1999),

reconsideration granted in part on other grounds, 1999 WL 1021104 (S.D.N.Y. Nov. 8, 1999);

see also Hasbrouck v. BankAmerica Hous. Servs., 187 F.R.D. 453, 456 (N.D.N.Y.) ("Here, the

settlement and confidentiality agreement between [the parties] was not ordered by a court, nor

even filed with a court.  Accordingly, good cause is the proper standard by which to evaluate the

propriety of a protective order."), aff'd, 190 F.R.D. 42 (N.D.N.Y. 1999).[2]

In light of these persuasive authorities, we respectfully decline to follow Dandong.  We

conclude, rather, that the heightened test articulated in In re Teligent applies to situations in

which there has been a prior court promise of confidentiality — not to discussions between

parties without court involvement and not to a settlement agreement with a private promise to

maintain its confidentiality.  Thus, the good cause standard of Rule 26(c) applies to this case.

To the extent a party seeks a protective order under Rule 26(c), that party "has the burden

of showing that good cause exists for issuance of that order."  Gambale v. Deutsche Bank AG,

377 F.3d 133, 142 (2d Cir. 2004); accord Duling v. Gristedes Operating Corp., 266 F.R.D. 66, 71

(S.D.N.Y. 2010) (citing cases).  "Ordinarily, good cause exists when a party shows that

---

[2] Some courts in the past applied a heightened standard — formulated differently from
the In re Teligent standard — to the discoverability of settlement documents.  See, e.g., Bottaro
v. Hatton Assocs., 96 F.R.D. 158, 160 (E.D.N.Y. 1982).  Many of the cases cited in this Opinion
explicitly reject Bottaro.  See also, e.g., Rates Tech. Inc. v. Cablevision Sys. Corp., 2006 WL
3050879, at *3 n.3 (E.D.N.Y. Oct. 20, 2006) (the Bottaro heightened standard "is contrary to
Rule 26").

disclosure will result in a clearly defined, specific and serious injury." In re Terrorist Attacks on Sept. 11, 2001, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (citations and internal quotation marks omitted); accord Allen v. City of New York, 420 F. Supp. 2d 295, 302 (S.D.N.Y. 2006). Ultimately, "[t]he grant and nature of protection is singularly within the discretion of the district court." Dove v. Atl. Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992) (citation omitted).

Here, Hanford has shown the materials are relevant, and Watershed has not met its burden of showing good cause for a protective order that would completely deny Hanford any of the settlement materials — either the discussions between the parties or the settlement agreement itself. Nonetheless, in light of the privacy interests of the parties to the settlement, and the minimal burden it would place on Hanford, we find that Watershed has met its burden of showing that there would be harm from the public disclosure of these materials during the discovery phase of this case. Accordingly, we will for now limit Hanford's ability to disclose the materials by making them subject to the protective order in the instant case.

SO ORDERED.

Dated: New York, New York
      August 16, 2019

GABRIEL W. GORENSTEIN
United States Magistrate Judge

6