```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
ROCKY ASPEN MANAGEMENT 204 LLC,     :
                                    :
                  Plaintiff,        :
                                    :    16 Civ. 4270 (VM)
     - against -                    :
                                    :    DECISION AND ORDER
HANFORD HOLDINGS LLC,               :
                                    :
                  Defendant.        :
-----------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

Plaintiff Rocky Aspen Management 204 LLC ("RAM 204") first brought this action against Hanford Holdings LLC ("Hanford") in 2016, seeking a declaratory judgment that RAM 204 was the owner of the majority of membership interests in Rocky Aspen LLC. In the four years since then, a variety of counterclaims and crossclaims have been asserted involving several other parties to this action: one group of parties includes third-party defendants Watershed Ventures LLC, Jeffrey Citron, Stephen Goglia, and Mark Hamwi (collectively with RAM 204, the "Watershed Defendants"), and another group including third-party defendants Patrick McGrath, AH DB Kitchen Aspen Investors LLC, Castlegrace Equity Investors LLC, and Aristone Hospitality LLC (collectively, the "Aristone Defendants").

After four years of litigation that remains in fact discovery, Hanford and the Watershed Defendants now jointly

move this Court to: (1) order the dismissal of RAM 204's second amended complaint against Hanford (see "Ram 204 Action," Dkt. No. 53); (2) order the dismissal of Hanford's claims against the Watershed Defendants (see "Hanford-Watershed Action," Dkt. No. 100); and (3) order the dismissal without prejudice of Hanford's claims against the Aristone Defendants (see "Hanford-Aristone Action," Dkt. No. 100), all pursuant to Federal Rule of Civil Procedure 41(a)(2) ("Rule 41(a)(2)") and/or stipulations by the respective parties. (See "Motion to Dismiss," Dkt. No. 152.)

The Watershed Defendants separately move for this Court to dismiss without prejudice the Aristone Defendants' remaining state law crossclaims against them (the "Aristone Crossclaims," Dkt. No. 116) pursuant to 28 U.S.C. Section 1367(c)(3) ("Section 1367(c)(3)"). (See "Watershed Motion," Dkt. No. 151.) The Aristone Defendants oppose both motions.

For the reasons set forth below, the Motion to Dismiss and the Watershed Motion are both GRANTED.

## I.   **BACKGROUND**

The Court presumes familiarity with the background of this case, which is set forth in multiple prior Orders, and recounts only the facts relevant to the two motions now

2

before this Court. Hanford and the Watershed Defendants
filed the Motion to Dismiss on June 18, 2020. They argue
that the Aristone Defendants have no basis to oppose
dismissal of the RAM 204 Action or the Hanford-Watershed
Action, neither of which involve the Aristone Defendants,
and that the Aristone Defendants cannot successfully oppose
dismissal of the Hanford-Aristone Action based only on
concerns about the "mere prospect of a second lawsuit" on
such claims. (See Motion to Dismiss at 3.) They add that
the Aristone Defendants are not entitled to know the
details of a settlement agreement made by Hanford and the
Watershed Defendants (the "Hanford-Watershed Settlement"),
and that the Aristone Defendants cannot adequately show
that dismissal of any actions here would cause it legal
prejudice under Rule 41(a)(2). (See id.) Hanford and the
Watershed Defendants separately filed a proposed order and
stipulations setting forth the terms of dismissal for each
of the three actions addressed in the Motion to Dismiss.
(See Dkt. Nos. 153-55.)

The Watershed Defendants filed the Watershed Motion on
the same day. They note that if the Court grants the Motion
to Dismiss, the only claims remaining in this action would
be the Aristone Crossclaims. (See Watershed Motion at 2.)

The Watershed Defendants ask the Court to decline to retain supplemental jurisdiction over the Aristone Crossclaims, all of which arise under state law. (See id. at 2-3.)

The Aristone Defendants opposed the Watershed Motion on June 22, 2020. (See "First Aristone Opposition," Dkt. No. 156.) The Aristone Defendants note that the Court previously retained supplemental jurisdiction over the Aristone Crossclaims (see Dkt. No. 115), that the Court possesses the discretion to retain supplemental jurisdiction, and that the Watershed Motion is contrary to the requirements of Rule 41(a)(2). (See First Aristone Opposition at 1.) The Aristone Defendants emphasize that this action has been pending for four years, that the Watershed Defendants previously dismissed a state court action filed before this action, and that dismissal of the Aristone Crossclaims runs counter to the requirements of Rule 41 because the Aristone Defendants remain ready to try their claims before this Court. (See id. at 2-3.)

On the same day, the Aristone Defendants also opposed the Motion to Dismiss. (See "Second Aristone Opposition," Dkt. No. 157.) The Aristone Defendants first note that they declined to stipulate to dismissal of the RAM 204 Action in March of 2020, on the grounds that RAM 204 owed them

4

attorneys' fees as the prevailing parties in a related state court litigation and as to certain claims previously dismissed in this action. (See id. at 1.) The Aristone Defendants further take issue with Hanford and the Watershed Defendants' failure to share the details of the Hanford-Watershed Settlement, arguing that this prevents a global settlement and suggests collusion between Hanford and the Watershed Defendants. (See id. at 2.) The Aristone Defendants claim that dismissal would be prejudicial because Hanford and the Watershed Defendants allegedly reached their settlement months ago, have allegedly engaged in vexatious gamesmanship throughout the action as reflected in various other related actions that have been either filed or dismissed, and because this action has been pending for over four years with costs amounting to millions of dollars. (See id. at 2-3.) Finally, the Aristone Defendants argue that dismissal of the Hanford-Aristone Action without prejudice raises the possibility that Hanford will forum shop and refile its claims when the Aristone Defendants may no longer be able to raise certain defenses due to the expiration of the relevant statutes of limitations; the Aristone Defendants thus attach their own

set of proposed terms for dismissal of the Hanford-Aristone Action with prejudice. (See id. at 3-4 & Ex. E.)

On June 23, 2020, Hanford and the Watershed Defendants disputed the Aristone Defendants' description of the relevant facts as baseless and requested a teleconference before this Court. (See Dkt. No. 158.) The Court held the requested teleconference on June 30, 2020, hearing the parties' arguments in full. The Court ordered the parties to attempt to resolve their disputes within two weeks and scheduled a July 14, 2020 conference in the event the parties could not reach their own resolution. (See Dkt. No. 160; Minute Entry dated 6/30/2020.)

On July 10, 2020, the Aristone Defendants asked the Court to adjourn the July 14, 2020 teleconference until August 4, 2020, or at least to hold any decision on the Motion to Dismiss and Watershed Motion in abeyance until then. (See "Adjournment Request," Dkt. No. 163.) The Aristone Defendants claim that they are still seeking a global settlement and need the extra time to address insurance coverage matters pertaining to certain of the Watershed Defendants. (See id. at 1.) The Aristone Defendants add that they are seeking to compel insurance coverage in a related action in this district (the

"Insurance Coverage Matter," No. 19 Civ. 7477), arguing that resolution of that matter may narrow the issues in dispute here. (See id. at 1-2.) The Aristone Defendants further note that they would need only one deposition to prosecute the Aristone Crossclaims, as all other relevant witnesses have either been deposed or testified in a related bankruptcy action addressing either the same or similar transactions. (See id. at 2.)

Hanford and the Watershed Defendants opposed the Adjournment Request on the same day. (See "Adjournment Opposition," Dkt. No. 164.) They argue that the Aristone Defendants raised their insurance-related arguments for the first time only two business days before the July 14, 2020 teleconference, having omitted to mention them on the June 30, 2020 teleconference. (See id. at 2.) They add that the motions for summary judgment in the Insurance Coverage Matter could reasonably take months to resolve, prolonging an already four-year-old litigation. (See id. at 2-3.) They continue by alleging that the Aristone Defendants are attempting to frustrate a settlement that would resolve the action in its entirety, even though it does not require any payment by the Aristone Defendants. (See id. at 3.)

7

Also on the same day, the Watershed Defendants supplemented the Watershed Motion in response to the arguments in the Adjournment Request. (See "Supplemental Watershed Letter," Dkt. No. 165.) They reiterate their belief that the Aristone Defendants' reference to insurance matters is an unreasonable last-minute attempt to prolong the litigation and frustrate the settlement efforts of Hanford and the Watershed Defendants. (See id. at 2-3.) The Watershed Defendants add that if the Aristone Defendants require only one more deposition in light of testimony and depositions in the bankruptcy action, that further counsels in favor of declining supplemental jurisdiction because of the minimal prejudice that would result from having a state court adjudicate the state law claims. (See id. at 2.)

In light of the voluminous letters and the parties' failure to reach any sort of resolution, the Court cancelled the July 14, 2020 teleconference. (See Dkt. No. 166.) The Court instead grants the Motion to Dismiss and Watershed Motion by this Order.

## II.  **LEGAL STANDARDS**

A.  DISMISSAL UNDER RULE 41(A)(2)

Rule 41(a)(2) provides that absent a stipulation of dismissal by all parties, "an action may be dismissed at

the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Voluntary dismissal without prejudice will generally be allowed "if the defendant will not be prejudiced thereby." Catanzano v. Wing, 277 F.3d 99, 109 (2d Cir. 2001). Two lines of authority have developed concerning whether dismissal without prejudice under Rule 41(a)(2) might be improper. Kwan v. Schlein, 634 F.3d 224, 230 (2d Cir. 2011). Under the first line of authority, dismissal without prejudice would be improper if "the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit." Camilli v. Grimes, 436 F.3d 120, 123 (2d Cir. 2006) (quoting Cone v. W. Va. Pulp & Paper Co., 330 U.S. 212, 217 (1947)).

Alternatively, under the second line of authority, a Court may consider factors derived from Zagano v. Fordham Univ., 900 F.2d 12, 14 (2d Cir. 1990): "(1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss."

<u>Camilli</u>, 436 F.3d at 123. "These factors are not necessarily exhaustive and no one of them, singly or in combination with another, is dispositive." <u>Kwan</u>, 634 F.3d at 230.

B.   <u>SUPPLEMENTAL JURISDICTION</u>

As a general matter, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." Section 1367(c)(3).

The justification for this "doctrine of discretion . . . lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims . . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring

for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966). In the usual case in which all federal law claims are dismissed before trial, considerations of judicial economy, convenience, fairness, and comity "will point toward declining jurisdiction over the remaining state-law claims." <u>In re Merrill Lynch Ltd. P'Ships Litig.</u>, 154 F.3d 56, 61 (2d Cir. 1998).

### III. **DISCUSSION**

A.   <u>DISMISSAL UNDER RULE 41(A)(2)</u>

   1. <u>Plain Legal Prejudice</u>

Starting with the RAM 204 Action and the Hanford-Watershed Action, dismissal clearly would not cause the Aristone Defendants any plain legal prejudice. Because neither action involves any claims asserted by or against the Aristone Defendants, the Aristone Defendants presumptively lack standing to challenge the Court's endorsement of the stipulations dismissing those actions. See <u>Zupnick v. Fogel</u>, 989 F.2d 93, 98 (2d Cir. 1993) ("Usually, a nonsettling defendant lacks standing to object to a court order approving a partial settlement because a

nonsettling defendant is ordinarily not affected by such a settlement."); see also Armco Inc. v. N. Atl. Ins. Co. Ltd., No. 98 Civ. 6084, 1999 WL 173579, at *1 (S.D.N.Y. Mar. 29, 1999) ("A settlement that does not divest non-settling parties of their legal claims or prevent the assertion of those claims does not constitute legal prejudice to the non-settling parties.").

At best, the Aristone Defendants indicate they did not previously agree to dismissal of the RAM 204 Action because RAM 204 allegedly owed them attorneys' fees following the dismissal of certain claims. But the Court sees no logical reason why RAM 204's failure to pay the Aristone Defendants fees for claims between those two sets of parties should prevent the Court's dismissal of claims between RAM 204 and Hanford; if RAM 204 truly owes the Aristone Defendants legal fees for other claims, the Aristone Defendants remain free to separately move for such fees.

Turning to the Hanford-Aristone Action, the Court similarly finds that dismissal without prejudice would not subject the Aristone Defendants to any plain legal prejudice beyond the mere prospect of a future lawsuit. The Aristone Defendants suggest that a future claim by Hanford "potentially exposes [the Aristone Defendants] to

limitations and other defenses when, at some unspecified time in the future, Hanford chooses to pursue its claims." (Second Aristone Opposition at 4.) But the Aristone Defendants' suggestion that they will be "potentially expose[d] . . . at some unspecified time in the future" due to the possible expiration of certain limitations is as speculative as the mere prospect of the lawsuit itself. Bearing in mind the Aristone Defendants' suggestion that they will demand that the insurer involved in the Insurance Coverage Matter make any required payments to Hanford, the details of a future action involving Hanford, and the Aristone Defendants' potential recourse, are currently far too indeterminate for the Court to find "plain legal prejudice." (See Adjournment Request at 1-2.)

And while the Aristone Defendants portray their situation as "the plight of a defendant who is ready to pursue a claim against the plaintiff in the same action that the plaintiff is seeking to have dismissed," they do not assert any counterclaims against Hanford. (See Second Aristone Opposition at 4.) The only claims that the Aristone Defendants pursue are cross-claims unprotected by Rule 41(a)(2), and which they can pursue regardless of the dismissal of the Hanford-Aristone Action. See Country-Wide

Produce, Inc. v. H. Sacks & Sons, Inc., No. 88 Civ. 408, 1992 WL 369928, at *1 (S.D.N.Y. Nov. 25, 1992) ("The only even arguably cognizable harm [] suffered by the end of this action was the dismissal (without prejudice) of [] cross-claims.   However,   while [Rule   41(a)(2)] limits dismissal of actions when counter-claims are pending, it provides no such protection to cross-claimants."). Again, any prejudice here is far from plain, if it exists at all.

   2. Prejudice Under the Zagano Factors

   The Zagano factors do not support denial of the Motion to Dismiss, either. The Aristone Defendants argue that the first two factors weigh against Hanford and the Watershed Defendants because they allegedly settled months ago, thus failing to demonstrate diligence, and because they have allegedly engaged in vexatious gamesmanship throughout this action and related actions. (See Second Aristone Opposition at 2-3.) In particular, the Aristone Defendants claim that Hanford and the Watershed parties settled as early as March of 2020, when the Aristone Defendants refused RAM 204's settlement offer due to the ongoing fee dispute, and that Hanford and the Watershed Defendants' reluctance to share the details of their settlement agreement reflects collusion against the Aristone Defendants. (Id. at 1-3.)

14

While it is true that a party may be entitled to discovery of other parties' settlement agreements where that party can produce evidence of collusion, <u>see</u> <u>Grant Thornton v. Syracuse Sav. Bank</u>, 961 F.2d 1042, 1046 (2d Cir. 1992), the Court is not so persuaded here. As Hanford and the Watershed Defendants explained on the June 30, 2020 teleconference, RAM 204 made its settlement offer in good faith ahead of a mediation session that aimed at facilitating a global settlement. In response, the Aristone Defendants did not provide any evidence that the Hanford-Watershed Settlement was finalized in March, apart from their impression that Hanford and the Watershed Defendants focused their questions more on the Aristone Defendants than each other in a subsequent deposition. The Court will not lightly infer that the majority of the parties in this action "were simply colluding in a pretend deposition discovery process to better position themselves as against the unwitting Aristone Defendants" on this basis. (Second Aristone Opposition at 3.)

And though this litigation has been contentious and sprawling, the Court is not persuaded under these circumstances that the history of the dispute or the fact of the Hanford-Watershed Settlement sufficiently

demonstrate the sort of ill motive that amounts to "undue vexatiousness" under the second Zagano factor. On the contrary, the Court is persuaded by the representations of Hanford and the Watershed Defendants that they continued settlement negotiations during the months following RAM 204's March 2020 offer and brought that settlement to the Court's attention with sufficient diligence. "[P]laintiffs were not dilatory in bringing the motion, but did so in order to facilitate an end to the litigation . . . [and] the motion was not made to harass or annoy." Catanzano, 277 F.3d at 110. The first two Zagano factors thus do not weigh against granting the Motion to Dismiss.

The third factor, regarding the extent to which the suit has progressed, would superficially seem to favor the Aristone Defendants' case for denial of the Motion to Dismiss. This action was first filed over four years ago, and the parties have likely spent significant amounts. Despite the time and expense of proceedings to date, though, the suit is not particularly close to trial or summary judgment motions. The parties' efforts in this action have largely focused on complex motions during the pleading stage, and counsel represented on the June 30, 2020 teleconference that they have taken only one

16

deposition to date. Discovery has yet to substantially complete, and a trial may remain over a year away, even putting aside the delay occasioned by the ongoing COVID-19 pandemic. From the Court's perspective, "although the litigation has gone on for years, [the relevant claims have] thus far not been litigated and only halting discovery has taken place." Id. In light of these countervailing considerations, the third factor is either neutral or weighs only weakly against granting the Motion to Dismiss.

Nor does the fourth factor, the "duplicative expense of relitigation," favor the Aristone Defendants. To the contrary, dismissal of the RAM 204 Action and the Hanford-Watershed Action will foreclose further expenses for those parties, and the Aristone Defendants would not have had to litigate those actions in any event. The duplicative expense of relitigation also does not favor denying the Motion to Dismiss the Hanford-Aristone Action. As noted above, it is unclear whether Hanford will continue litigating its claims against the Aristone Defendants. Even if Hanford does litigate further, the parties' letter exchanges suggest that Hanford would likely proceed on only one of its numerous claims, which could significantly

17

reduce the expense of litigation going forward. In the
Motion to Dismiss, Hanford represents that it offered to
release all of its claims against the Aristone Defendants
except for one involving a guaranty by Patrick McGrath.
(See Motion to Dismiss at 2.) Hanford explicitly adds that
it likely would not pursue any other claims in the future,
despite the Aristone Defendants' refusal of its offer. (Id.
at 3.) The Aristone Defendants similarly focus entirely on
the guaranty claim when opposing dismissal of the Hanford-
Aristone Action. (See Second Aristone Opposition at 3-4.)
If future litigation proceeds as the parties appear to
contemplate, it will necessarily be narrower and
consequently less expensive than the continuation of the
present litigation on all of Hanford's claims.

     The fifth Zagano factor concerns the adequacy of the
proposed justification for dismissal. This factor does not
favor the Aristone Defendants either; it weighs rather to
the contrary. This Court has recommended that the parties
settle on multiple occasions, including the teleconferences
on February 27, 2020 and June 30, 2020. Hanford and the
Watershed Defendants' justification for the Motion to
Dismiss appears to be a good faith effort to "facilitate an

end to the litigation," consistent with the Court's suggestions. See Catanzano, 277 F.3d at 110.

Granting the Motion to Dismiss does not preclude the Aristone Defendants from continuing to pursue their only claims in this action: the Aristone Crossclaims. These claims still require further development in discovery, and there is reason to believe that any future litigation expenses will not be significantly duplicative of those in this action to date. The Motion to Dismiss is neither untimely nor vexatious, and it aims at facilitating an end to this litigation. The Zagano factors simply do not support a finding that the Aristone Defendants will suffer meaningful prejudice from the dismissals requested. Accordingly, the Court will grant the Motion to Dismiss and separately enter the proposed Order and stipulations of dismissal of Hanford and the Watershed Defendants.

B.   SUPPLEMENTAL JURISDICTION

Having granted the Motion to Dismiss, the Court now turns to the Watershed Motion. As noted above in Section I, the Aristone Defendants argue that this Court previously exercised its discretion to retain supplemental jurisdiction over the Aristone Crossclaims and should not reverse course now. Indeed, this Court previously observed

that the Watershed Defendants failed to establish
"exceptional circumstances" that would justify declining
jurisdiction under 28 U.S.C. Section 1367(c)(4), and that
the Court could not "otherwise justify declining to
exercise jurisdiction" at the time. (Dkt. No. 115 at 12.)

However, circumstances have materially changed since
the Court was last presented with a request to decline
supplemental jurisdiction. At this time, the Court could
readily justify declining jurisdiction under Section
1367(c)(3): because it has granted the Motion to Dismiss,
the Court has now "dismissed all claims over which it has
original jurisdiction." Section 1367(c)(3). Under Section
1367(c)(3), "it is indisputable" that this Court can
decline to exercise supplemental jurisdiction following the
dismissal of all federal law claims. See Motorola Credit
Corp. v. Uzan, 388 F.3d 39, 56 (2d Cir. 2004). And as noted
above in Section II.B., both the United States Supreme
Court and the United States Court of Appeals for the Second
Circuit discourage the exercise of supplemental
jurisdiction in the majority of cases where all federal law
claims have been dismissed.

The Court recognizes that this action has been pending
for four years, and that the Aristone Defendants would

20

prefer to continue litigation in this forum. But the Court is persuaded that the balance of the factors of judicial economy, convenience, fairness, and comity ultimately weighs in favor of declining supplemental jurisdiction.

The two key factors here are comity and judicial economy. Comity heavily favors declining supplemental jurisdiction, as a state court could more readily interpret the purely state-law Aristone Crossclaims. And the Court is not convinced that judicial economy favors its retention of supplemental jurisdiction, either. Consider the Aristone Defendants' own description of where the case stands as regards the Aristone Crossclaims. They claim that only one more deposition is needed because they have otherwise already obtained the necessary testimony from the related bankruptcy action. (See Adjournment Request at 2.) They add that resolution of the Insurance Coverage Matter might aid in settlement of this action, as it is allegedly relevant to the Hanford-Aristone Action and may obviate the need for action on the Aristone Crossclaims. (See id. at 1-2.)

In other words, the bankruptcy action largely provides the factual support for the Aristone Crossclaims, another action might significantly impact the need to consider the Aristone Crossclaims, and still another action before a

state court would provide surer interpretation of the purely state-law claims. If all that remains is one deposition, then the burden of discovery for future proceedings is minimal. It is unclear why dismissal of this particular action would be prejudicial when comity favors state court interpretation of state law and judicial economy suggests that other courts are already playing significant roles and would have little more to do. Declining supplemental jurisdiction does not strike the Court as unfair under these circumstances, and any inconvenience to the Aristone Defendants is outweighed by the other considerations governing the exercise of supplemental jurisdiction. Accordingly, the Court will grant the Watershed Motion and decline supplemental jurisdiction over the Aristone Crossclaims.

## IV. <u>ORDER</u>

For the reasons discussed above, it is hereby

**ORDERED** that the joint motion (<u>see</u> Dkt. No. 152) of defendant Hanford Holdings LLC ("Hanford"), plaintiff Rocky Aspen Management 204 LLC ("RAM 204"), and third party defendants Watershed Ventures LLC, Jeffrey Citron, Stephen Goglia, and Mark Hamwi (collectively with RAM 204, the "Watershed Defendants") to dismiss RAM 204's second amended

complaint against Hanford (see Dkt. No. 53), Hanford's claims against the Watershed Defendants (see Dkt. No. 100), and to dismiss without prejudice Hanford's claims against third-party defendants Patrick McGrath, AH DB Kitchen Aspen Investors LLC, Castlegrace Equity Investors LLC, and Aristone Hospitality LLC (collectively, the "Aristone Defendants") (see Dkt. No. 100), is **GRANTED**. The Court will separately enter the proposed order and stipulations governing the aforementioned dismissals. (See Dkt. Nos. 153–55.) It is further

**ORDERED** that the motion of the Watershed Defendants (see Dkt. No. 151) to dismiss without prejudice the Aristone Defendants' remaining cross-claims against the Watershed Defendants (the "Aristone Crossclaims," Dkt. No. 116) is **GRANTED**. Because the Aristone Crossclaims arise entirely under state law and require limited further development through fact discovery, the Court declines to retain supplemental jurisdiction over these claims.

**SO ORDERED.**

Dated:   New York, New York
         15 July 2020

_____
Victor Marrero
U.S.D.J.